Rachel Maimin
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
(212) 262-6700
rmaimin@lowenstein.com
*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEITH BOYKIN<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>THE CITY OF NEW YORK,<br><br>　　　　　Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Keith Boykin, by way of Complaint against Defendant, the City of New York, hereby alleges and states as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff, Keith Boykin, seeks judgment against Defendant for violation of his rights under the First and Fourth Amendments to the Constitution of the United States and false arrest.

2. On May 30, 2020, Keith Boykin, as a member of the press, was reporting on the protests occurring in the City of New York when he was improperly arrested, without cause, by members of the New York Police Department ("NYPD").

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's claims of violation of federal constitutional rights pursuant to 28. U.S.C § 1331 because this case arises under 42 U.S.C. § 1983.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of New York.

### PARTIES

6. Plaintiff is an individual who resides in the State of New York. He is a freelance reporter. Plaintiff attended the protests in New York following the death of George Floyd for the purpose of reporting on them.

7. Defendant City of New York is a municipality incorporated in the State of New York. As a local government entity, the City of New York ("New York City") is a juridical entity under 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

8. On May 25, 2020, George Floyd, an African-American man, was killed by an officer of the Minneapolis Police Department.

9. Video coverage of Mr. Floyd's killing was widely disseminated, resulting in nationwide protests in New York City and elsewhere.

10. On information and belief, during the protests, NYPD officers at times engaged in unconstitutional behavior through their unofficial customs or practices.

11. On May 30, 2020, Plaintiff was working as a freelance reporter covering the protests taking place in New York City following the killing of George Floyd.

12. Plaintiff has roughly 10 years of experience covering protests as a member of the press.

13. On May 30, 2020, Plaintiff had his press badge on his person, in his wallet, when reporting. He used his bicycle as a means of transportation to cover more ground.

14. Plaintiff covered the protest as protestors moved throughout New York City. Throughout the day, Plaintiff posted videos and photos on social media and interviewed protestors.

15. The protestors walked onto the West Side Highway. As the protestors were approaching an exit on the highway, there was a group of ten or so NYPD officers marching up to the crowd in riot gear.

16. The officers approached Plaintiff and he notified the officers that he was with the press. The officers walked past Plaintiff, but they soon turned around and began to approach him again.

17. Plaintiff once again notified the NYPD officers that he was with the press.

18. One officer, in response, told Plaintiff that it does not matter if he is with the press. At approximately 3:30 p.m., the NYPD arrested Plaintiff. Members of the NYPD used zip ties to restrain the Plaintiff's hands. While the Plaintiff was being arrested, his phone, which he used for reporting, fell and the phone screen broke.

19. Police walked Plaintiff backwards—which prevented Plaintiff from seeing where he was being taken—to a police van. Inside the van, the police processed Plaintiff. During processing, the police took Plaintiff's driver's license.

20. Plaintiff never received his driver's license back from the police. This inconvenienced Plaintiff because of the time and cost involved in obtaining a new driver's license, and it worried him that the NYPD officer who arrested him knew where he lived.

21. At no point during Plaintiff's arrest did the NYPD read Plaintiff his Miranda Rights.

22. The police van did not have any open windows and the air conditioner was not working. The officers closed the van doors, and Plaintiff suffered distress because of: (1) extreme heat, (2) anxiety due to being in a closed-door van, and (3) his history of syncopal episodes (fainting).

23. Plaintiff notified the officers that he was uncomfortable from the heat. The officers kept the doors closed, but were eventually able to fix the air conditioner.

24. Plaintiff also told the officers that the zip ties were on too tight and were hurting him. The officers advised him that they did not have the proper equipment to remove the zip ties and that he would have to wait until they arrived at the prison cell.

25. The zip ties caused Plaintiff pain, irritation, and bruising.

26. NYPD officers later arrested another man and placed him in the van alongside Plaintiff. After sitting in the police van for an hour, the officers escorted Plaintiff to a prisoner transport bus.

27. Plaintiff was placed into one of the cages inside the bus along with other individuals who were arrested that afternoon. Plaintiff stayed in this un-air conditioned bus for about an hour.

28. Eventually, Plaintiff was taken to One Police Plaza where he was placed in a cell with roughly 35 other prisoners.

29. There was no social distancing inside the cell and most people were not wearing masks. Plaintiff was distressed due to the possibility of contracting the Coronavirus by being in close contact to others.

30. Plaintiff could not contact anyone while he was arrested because the payphone at One Police Plaza was not functioning.

31. The officers did not notify Plaintiff of when he would be released. Plaintiff feared that he would have to spend the night in the cell.

32. In total, Plaintiff was in NYPD custody for approximately six hours, including a total of four hours in the prison cell. Plaintiff was charged with only minor offenses for "Disorderly Conduct – Blocking Vehicular Traffic" and "Walking on a Highway."

33. On May 31, 2020, Plaintiff received an email from Mayor de Blasio's then-press secretary, Freddi Goldstein, stating in relevant part, "I want to apologize for what happened to you today. It never should have happened."

34. The charges against Plaintiff were ultimately dismissed on September 9 and 14, 2020.

35. The NYPD's arrest of Plaintiff is one of the many instances of the NYPD's unconstitutional practices when policing large-scale protests.

36. The NYPD has a long history of aggressively policing protests. This misconduct is widely documented in prior lawsuits, complaints, and reports. For instance, following the NYPD's unlawful actions in a 2003 anti-war protest, protests of the 2004 Republican National Convention, and the 2011 "Occupy Wall Street" protests, hundreds of complaints were reported and numerous lawsuits were filed against the NYPD alleging, *inter alia*, that the NYPD (i) used unnecessary and excessive force against peaceful protesters, bystanders, legal observers, and journalists and (ii) effected unlawful and mass arrests without probable cause.

37. In October 2015, the NYPD Office of the Inspector General issued a report, finding that the NYPD's "use-of-force policy [was] vague and imprecise, providing little guidance to individual officers on what actions constitute force" and that the NYPD has "insufficient training on de-escalation tactics necessary to prevent excessive force in the first instance."[1]

38. On October 20, 2020, the Chief of Department for the NYPD, Terence A. Monahan admitted that "[a] lot of cops had not received disorder trainings since they first came on the job."

---

[1] Office of the Inspector General for the NYPD Release #05-2015 (Oct.1, 2015), https://www1.nyc.gov/assets/doi/reports/pdf/2015/2015-10-01-Pr_uofrpt.pdf

39.     Further, in its December 2020 report, the New York City Department of Investigations, concluded that prior to the George Floyd protests, the "NYPD lacked standardized, agency-wide, in-service training related to policing protests."[2]

40.     Further, the New York City Corporation Counsel's 2020 report concluded that the NYPD's Patrol Guide does not include specific detail on policing protests or safeguarding peaceful assemblies.[3]

41.     Defendant repeatedly had notice that the NYPD was improperly training officers in policing protests long before the George Floyd protests, yet Defendant failed to take any action to correct officer training. This failure led to mass violations of individuals' constitutional rights, including the rights of Plaintiff.

42.     Plaintiff intends to continue his career as a freelance reporter covering newsworthy protests from public locations, including activities in New York City, but fears further obstruction, harassment, and detention by the NYPD. That fear makes it more difficult for him to gather news for dissemination to the public and interferes with him doing his job effectively.

---

[2] New York City Department of Investigations, Investigation into NYPD Response to the George Floyd Protests (Dec. 2020), https://www1.nyc.gov/assets/doi/reports/pdf/2020/DOIRpt.NYPD%20Reponse.%20GeorgeFloyd%20Protests.12.18.2020.pdf
[3] New York City Law Department, Corporation Counsel Report (Dec. 2020), https://www1.nyc.gov/assets/law/downloads/pdf/ProtestReport-np.pdf

## COUNT ONE

## **42 U.S.C. § 1983 - Violation of the First Amendment**

43. Plaintiff repeats and re-alleges all of the foregoing allegations as though fully set forth herein.

44. The NYPD violated Plaintiff's rights under the First Amendment to freedom of the press and freedom of speech by interfering with Plaintiff's ability to gather information and cover a matter of public interest as a member of the press.

45. Observing and recording public protests is a legitimate means of gathering information for public dissemination that is protected by both the freedom of speech and freedom of the press clauses of the First Amendment.

46. The NYPD engaged in these unlawful actions willfully and knowingly, acting with reckless or deliberate indifference to Plaintiff's First Amendment rights.

47. At the time Plaintiff was arrested, the NYPD's unofficial custom or practice was to obstruct or prevent members of the press from recording protests in public locations and the police's response to such protests, in violation of the First Amendment.

48. At all times relevant to this Complaint, Defendant was aware that the NYPD maintained an unofficial custom or practice of failing to provide its police officers proper training or adequate supervision on the First Amendment.

49. Defendant's failure to correct the NYPD's unofficial customs or practices demonstrate a deliberate indifference to the constitutional rights of persons within New York City and caused the violation of Plaintiff's rights alleged herein.

50. The NYPD curtailed Plaintiff's First Amendment rights.

## COUNT TWO

### 42 U.S.C. § 1983 - Violation of the Fourth Amendment

51. Plaintiff repeats and re-alleges all of the foregoing allegations as though fully set forth herein.

52. Plaintiff has a right under the Fourth Amendment to be free from unreasonable searches and seizures.

53. The NYPD violated Plaintiff's established right to be free from unlawful searches and seizures when the NYPD officers arrested and detained Plaintiff, all without probable cause to believe that Plaintiff had engaged in criminal activity or committed any crime.

54. The NYPD engaged in these actions willfully and knowingly, acting with deliberate indifference to Plaintiff's Fourth Amendment rights.

55. At the time Plaintiff was arrested, the NYPD's unofficial custom or practice was to obstruct or prevent members of the press from recording protests in public locations and the police's response to such protests, in violation of the Fourth Amendment.

56. At all times relevant to this Complaint, Defendant was aware that the NYPD maintained an unofficial custom or practice of failing to provide its police officers proper training or adequate supervision on the Fourth Amendment.

57. Defendant's failure to correct the NYPD's unofficial customs or practices demonstrate a deliberate indifference to the constitutional rights of persons within New York City and caused the violation of Plaintiff's rights alleged herein.

58. The NYPD curtailed Plaintiff's Fourth Amendment rights.

## COUNT THREE

### False Arrest

59. Plaintiff repeats and re-alleges all of the foregoing allegations as though fully set forth herein.

60. Plaintiff was seized by the NYPD when officers intentionally arrested and detained Plaintiff.

61. At all times relevant to this Complaint, the NYPD officers were acting within the scope and course of employment with Defendant.

62. Plaintiff did not commit a crime because as a member of the press, he was lawfully entitled to cover the protests. Moreover, Mayor de Blasio's then press secretary apologized to Plaintiff and eventually all charges were dismissed.

63. Plaintiff did not pose a threat to the NYPD officers or others.

64. Defendant is liable to Plaintiff pursuant to the state common law doctrine of respondeat superior.

**WHEREFORE**, Plaintiff requests judgment as follows:

A. On Counts One through Three, awarding damages in favor of Plaintiff, in an amount to be determined at trial

B. Granting Plaintiff such other and further relief as the court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: February 16, 2021
New York, New York

By:  /s/ Rachel Maimin
Rachel Maimin
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
(212) 262-6700
rmaimin@lowenstein.com
*Counsel for Plaintiff*